On Application for Rehearing

PER CURIAM.
The opinion of April 9, 2010, is withdrawn, and the following is substituted therefor.
This is a legal-malpractice case. Dennis Guyton, ■ an inmate in the custody of the Alabama Department of Corrections, appeals from the summary judgment entered in favor of one of his attorneys, Scott Hunt. Guyton initially appealed this case to the Alabama Supreme Court, which transferred the case to this court pursuant to § 12-2-7(6), Ala.Code 1975.
The record indicates the following. Guyton was convicted of sodomy and sexual abuse of a child younger than 12 years old. Guyton alleged that, after his conviction, Hunt was retained to prepare and file a motion for a new trial in the criminal action. If the motion for a new trial was denied, Guyton said, then Hunt was to handle the direct appeal. Hunt filed the motion for a new trial. However, Guyton alleges, Hunt committed legal malpractice when he failed to notify Guyton or any member of his family that that motion had been denied. Guyton contends that a family member learned of the denial of the motion from another attorney not connected with his case. Guyton appears to argue that the delay in learning that the motion had been denied delayed his filing a notice of appeal. He also appears to argue that he had to pay another attorney to handle his direct appeal even though Hunt had already been paid to do so.
Hunt filed a motion for a summary judgment. In support of his motion, Hunt attached an affidavit in which he stated that he had been practicing law since 1997. He said that he had reviewed his records in this case and that, in his opinion, he had exercised “a reasonable degree of care, skill, and diligence that is normally exercised under the same or similar circumstances by other licensed attorneys.” Accordingly, he opined, he had not breached the applicable standard of care required of him in Guyton’s criminal case.
After receiving Hunt’s properly supported motion for a summary judgment, the trial court entered an order requiring Guyton to file a response by April 1, 2009, including affidavits of any expert in support of Guyton’s allegations that Hunt had *1087 not met the appropriate standard of care. Guyton, however, did not provide an affidavit from an expert qualified to address the issue whether Hunt had breached the standard of care owed to Guyton in the criminal case. On August 18, 2009, the trial court entered a summary judgment in favor of Hunt. In the judgment, the trial court stated that, based upon the submissions of the parties, it found that Guyton had failed to present substantial evidence of damages and that he also had failed to provide any competent evidence to contradict Hunt’s affidavit that he had not breached the standard of care. Therefore, the trial court explained, Guyton had failed to meet his burden of demonstrating that Hunt had breached the applicable standard of care. The trial court also noted that, despite the alleged delay, Guyton had not been deprived of a direct appeal. Guy-ton appeals.
“We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala.2002).
“ We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing á summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’ “Nationwide Prop. & Cas. Ins. Co. [v. DPF Architects, P.C.], 792 So.2d [369] at 372 [(Ala.2001)] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).
Guyton, who is acting pro se on appeal, states that in his complaint, in addition to his legal-malpractice claim, he alleged a claim of fraud against Hunt, which was based on Hunt’s failure to tell him that the postjudgment motion had been denied, even when Hunt was asked about the status of the motion. Guyton appears to argue that, as to his fraud claim, he was not required to present evidence regarding the breach of the applicable standard of care and, therefore, that the trial court improperly entered the summary judgment as to the fraud claim.
The Alabama Legal Services Liability Act (“ALSLA”), §§ 6-5-571 et seq., Ala. Code 1975, provides that “there shall be only one form and cause of action against legal service providers in courts in the State of Alabama and it shall be known as the legal service liability action and shall have the meaning as defined herein.” § 6-5-573, Ala.Code 1975. The ALSLA defines a “legal service liability action” as follows:
“(1) Legal service liability action. Any action against a legal service provider in which it is alleged that some injury or damage was caused in whole or in part by the legal service provider’s violation of the standard of care applicable to a legal service provider. A legal service liability action embraces all claims for injuries or damages or wrongful death whether in contract or in tort and whether based on an intentional or unintentional act or omission. A legal services liability action embraces any *1088 form of action in which a litigant may seek legal redress for a wrong or an injury and every legal theory of recovery, whether common law or statutory, available to a litigant in a court in the State of Alabama now or in the future.”
§ 6-5-572(1), Ala.Code 1975.
Accordingly, Guyton’s fraud claim was subsumed by the legal-malpractice claim. Therefore, to the extent that Guyton argues that the summary judgment was improper as to the fraud claim, his argument is without merit.
Guyton argues that Hunt’s failure to timely notify him or his family members that the trial court in the criminal case had denied his postjudgment motion was such a blatant error that Guyton did not need expert testimony to demonstrate that Hunt’s conduct breached the applicable standard of care.
The ALSLA defines the applicable standard of care as follows:
“(3) Standard of care.
“a. The standard of care applicable to a legal service provider is that level of such reasonable care, skill, and diligence as other similarly situated legal service providers in the same general line of practice in the same general locality ordinarily have and exercise in a like case.”
§ 6-5-572(3)a., Ala.Code 1975.
Generally, a plaintiff alleging a legal-malpractice claim must prove that claim through expert testimony. Ton-smeire v. AmSouth Bank, 659 So.2d 601, 605 (Ala.1995); see also § 6-5-580, Ala. Code 1975. However, in Valentine v. Watters, 896 So.2d 385 (Ala.2004), our supreme court recognized the “common knowledge” exception to that general rule.
“In Valentine, [the Alabama Supreme] Court held that the ALSLA applied to Linnie Valentine’s legal-malpractice claims against Richard Watters. 896 So.2d at 390-91.... Valentine had consulted Watters about representing her in litigation regarding defective breast implants, and one of her claims was that Watters had misrepresented to her that ‘he was very familiar with litigation regarding breast implants and that he had represented several clients in breast-implant litigation.’ 896 So.2d at 386.
“In response to the contention that she had failed to offer expert testimony in support of her claim, Valentine argued
“ ‘that her case is analogous to medical-malpractice suits and that the exception applied in those cases to the requirement of expert testimony should also apply to legal-malpractice cases. See Ex parte HealthSouth Corp., 851 So.2d 33, 38 (Ala.2002) (stating that expert testimony is not required in a case “ ‘ “where want of skill or lack of care is so apparent ... as to be understood by a layman, and requires only common knowledge and expertise to understand it.” ’ ” (quoting Tuscaloosa Orthopedic Appliance Co. v. Wyatt, 460 So.2d 156, 161 (Ala.1984))).’
“896 So.2d at 391. [The supreme c]ourt agreed with Valentine.
“[The supreme c]ourt noted that the statutory scheme for establishing a legal-malpractice claim is similar to the requirements imposed by the Alabama Medical Liability Act of 1987, §§ 6-5-540 to 6-5-552, Ala.Code 1975 (‘the AMLA’), for medical-malpractice claims and that even though neither the ALS-LA nor the AMLA includes an express requirement that a plaintiff offer expert testimony in support of his or her claim, generally expert testimony is required. [The supreme c]ourt thoroughly examined the exception to the expert-testimo *1089 ny requirement in medical-malpractice actions 1 “where the want of skill or lack of care is so apparent as to be within the comprehension of the average layman and thus requires only common knowledge and experience to understand it.” ’ 896 So.2d at 392 (quoting Rosemont, Inc. v. Marshall, 481 So.2d 1126, 1129-BO (Ala.1985)). [The supreme c]ourt stated:
“ ‘Many other jurisdictions recognize a “common knowledge” exception to the requirement that a plaintiff in a legal-malpractice case must present expert testimony. McIntyre v. Rumsey, 80 P.3d 1201 (Kan.Ct.App.2003) (unpublished opinion) (stating that expert testimony is not necessary where the attorney’s breach of duty is so clear and obvious that the determination that the attorney deviated from the standard of care is within the common knowledge of the trier of fact); Dubreuil v. Witt, 80 Conn.App. 410, 418, 835 A.2d 477, 483 (2003) (stating that the exception to the need for expert testimony applies when “the defendant’s conduct was such an obvious and gross want of care and skill that the neglect would be clear to the average layperson”); Roberts v. Hutton, 152 Ohio App.3d 412, 423, 787 N.E.2d 1267, 1276 (2003) (“The only exception to this [expert-testimony] requirement is when the alleged breach of care is so obvious that it can be determined from the ordinary knowledge and experience of laymen.”); Mazuca & Assocs. v. Schumann, 82 S.W.3d 90, 97 (Tex.Ct.App.2002) (“Expert testimony is not required if the attorney’s lack of care and skill is so obvious that the trier of fact can find negligence as a matter of common knowledge.”); Hall v. Fedor, 349 S.C. 169, 561 S.E.2d 654 (S.C.Ct.App.2002) (noting that expert testimony is normally required to establish the applicable standard of care except when the matter is within the common knowledge of laypersons).
“ ‘Watters argues, and we agree, that expert testimony is generally required in a legal-malpractice case because a jury that is unfamiliar with the principles of law governing the underlying case might be incapable of discerning whether a lawyer’s professional conduct falls outside an acceptable standard of care. Generally, an expert may testify when “scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.” Ala. R. Evid. 702. However, “Alabama historically .and generally has refused expert testimony or opinion on a subject that is within the understanding of the average layperson.” Ala. R. Evid. 702, Advisory Committee’s Notes.
[[Image here]]
“ “We are persuaded by our earlier analyses under the medieal-services-liability cases and by other courts’ application of that same kind of analysis to legal-services-liability cases that an exception to the general requirement that a plaintiff present expert testimony in support of a legal-malpractice claim occurs where a legal-service provider’s want of skill or lack of care is so apparent as to be understood by a layperson and requires only common knowledge and experience to understand it....
[[Image here]]
“ ‘... Accepting Valentine’s claim that Watters told her that he had represented prior clients in litigation involving breast implants and that he later admitted he had not, we conclude that Valentine is not required to *1090 present expert testimony to support her claim that Watters breached the applicable standard of care in misrepresenting his qualifications to her in this manner. We hold that a trier of fact with common knowledge and experience could determine that an attorney’s representation that he or she has had experience in a certain type of litigation, when that representation is not true, violates the standard of care.’
“896 So.2d at 393-95.”
Wachovia Bank, N.A. v. Jones, Morrison & Womack, P.C., 42 So.3d 667, 679-81 (Ala.2009) (footnote omitted).
In this case, we agree with Guy-ton that an attorney’s failure to notify a client of a ruling on a motion in time for the client to timely file an appeal constitutes a breach of the standard of care that is so apparent that expert testimony is not required for a layperson to understand that breach. However, our inquiry does not end with a finding that expert testimony was not required in this case.
“To prevail in a legal-malpractice action, the plaintiff must prove that, but for the attorney’s negligence, the legal matter concerning which the attorney is alleged to have been negligent would have been resolved more favorably to the plaintiff. Pickard v. Turner, 592 So.2d 1016, 1019 (Ala.1992). To meet this burden, the plaintiff must prove (1) that, in the absence of the alleged malpractice, the plaintiff would have been entitled to a more favorable result in the legal matter concerning which the attorney is alleged to have been negligent, and (2) that the attorney’s negligence in fact caused the outcome of the legal matter to be less favorable to the plaintiff than the outcome would have been in the absence of the alleged malpractice. Pickard, 592 So.2d at 1020 (‘ “Generally, actionable [legal] malpractice cannot be established in the absence of a showing that the attorney’s wrongful conduct has deprived the client of something to which he would otherwise have been entitled.” [7A C.J.S. Attorney and Client § 255 at 462 (1980).] A lawyer cannot be expected to achieve impossible results for a client.’); Hall v. Thomas, 456 So.2d 67, 68 (Ala.1984) (‘A claim for malpractice requires a showing that in the absence of the alleged negligence the outcome of the case would have been different.’ (citing Mylar v. Wilkinson, 435 So.2d 1237 (Ala.1983))).”
Bonner v. Lyons, Pipes & Coolc, P.C., 26 So.3d 1115, 1120 (Ala.2009); see also Independent Stave Co. v. Bell, Richardson & Sparkman, P.A., 678 So.2d 770, 772 (Ala.1996) (In a legal-malpractice case, the plaintiff must offer proof that, but for the defendant attorney’s negligence, the outcome of the underlying case would have been different.).
In this case, as the trial court pointed out in its judgment, the record indicated that Guyton did appeal from the conviction, and the Court of Criminal Appeals affirmed the conviction, without an opinion, on December 14, 2007.[1] See Guyton v. State, 19 So.3d 260 (Ala.Crim.App.2007) (table). Any delay, if indeed there was a delay, in filing Guyton’s notice of appeal that may have been caused by Hunt’s failure to “timely” notify Guyton of the denial of his postjudgment motion obviously did not preclude Guyton from timely filing his notice of appeal or prevent the Court of Criminal Appeals from consider *1091 ing his appeal. Guyton has not demonstrated that Hunt’s delay, if any, caused Guyton harm. Furthermore, we conclude that based upon the record before us, Guy-ton failed to demonstrate that the outcome of his criminal case, i.e., his conviction and sentence, would have been any different had Hunt notified him of the denial of his postjudgment motion.
Guyton also argues that, contrary to the trial court’s finding, he incurred damages because he had to hire another lawyer to represent him on appeal. From affidavits that Guyton submitted in opposition to Hunt’s motion for a summary judgment, it appears that Guyton’s brother Richard paid Hunt $2,500 not only to file a motion for a new trial upon entry of a judgment after a verdict was reached in the underlying criminal case, but also to file a notice of appeal and to prepare an appellate brief, if necessary. In his affidavit, Richard states that, after he learned that Hunt had failed to tell Guyton or him that the motion for a new trial in the underlying criminal matter had been denied, he fired Hunt. Richard then paid a second attorney $5,000 to represent Guyton on appeal. Richard also stated that, although he did not ask for a return of any of the $2,500 he had paid Hunt, Hunt wrote him a check for $1,700 after Richard “fired” him.
To the extent that Guyton claims he was damaged because he was required to hire another attorney to represent him on appeal, the evidence is undisputed that his brother Richard hired and paid both Hunt and the second attorney to represent Guy-ton after Guyton’s conviction. There is no evidence in the record indicating that Guy-ton himself contributed to those payments. Because Guyton did not pay any portion of the attorneys’ fees in the underlying criminal action, he cannot claim he was damaged as a result of any allegedly unnecessary payments incurred because of Hunt’s conduct.
“ ‘As a general rule, “a litigant may not claim standing to assert the rights of a third party.” Jersey Shore Medical Center-Fitkin Hosp. v. Estate of Baum, 84 N.J. 137, 417 A.2d 1003 (1980). A party lacks standing to invoke the power of the court in his behalf in the absence of “a concrete stake in the outcome of the court’s decision.” Brown Mechanical Contractors, Inc. v. Centennial Ins. Co., 431 So.2d 932, 937 (Ala.1983).’
“Ex parte Izundu, 568 So.2d 771, 772-73 (Ala.1990).”
Miller v. Thompson, 844 So.2d 1229, 1232 (Ala.Civ.App.2002).
The trial court correctly found that Guy-ton had failed to prove that he was in any way damaged by any alleged misconduct on the part of Hunt. Accordingly, for the reasons set forth above, the trial court’s summary judgment in Hunt’s favor is affirmed.
APPLICATION OVERRULED; OPINION OF APRIL 9, 2010, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
All the judges concur.

. The trial court also noted that Guyton filed a legal-malpractice action against his trial counsel in the criminal case. That civil action was dismissed on January 13, 2009, and on May 27, 2009, this court dismissed the appeal, without an opinion, for lack of prosecution. See Guyton v. Davis, 51 So.3d 1133 (Ala.Civ.App.2009) (table).